# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JEAN A. LUCERO, in her capacity
as guardian for Fred Hildebrandt,

    Plaintiff,

v.                                                         CIV NO. 01 - 1243 ELM/LFG

THE CITY OF ALBUQUERQUE,
OFFICER R. JOHNSON, in his official
capacity and individually, OFFICER G.
WOOD, in his official capacity and
individually, and ARCA, a New Mexico
corporation.

    Defendants.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before me on a Motion for Summary Judgment by the City of Albuquerque, Officer Johnson and Officer Wood. The remaining Defendants, except ARCA, have settled and been dismissed. Having reviewed the Motion for Summary Judgment and the moving papers, I find that the Motion is not well taken and will be DENIED.

## FACTUAL BACKGROUND

    Some of the issues of fact are disputed by the parties; when disputed I have so noted.

Fred Hildebrandt is an incapacitated adult in his forties who has had significant mental and behavioral deficits since birth. His legal guardian is his sister the Plaintiff, Jean Lucero. Mr. Hildebrandt lived, at the relevant time of this lawsuit, in a residential setting in Albuquerque operated by ARCA. He also suffered a traumatic brain injury in 1991 which may be the cause of Mr. Hildebrandt's violent outbursts and unpredictable behavior. Defendants state that Mr. Hildebrandt is mentally unstable. Plaintiff denies this and states that Mr. Hildebrandt is not suffering from a mental illness.

Mr. Hildebrandt is a large man, over six feet tall and weighs over 200 pounds. He has had past incidents in which he has assaulted or battered ARCA employees or social workers and inflicted injuries, including a broken arm and a head injury. The Albuquerque Police, including the Critical Incident Team, have been involved numerous times with Mr. Hildebrandt during his violent outbursts. The Albuquerque Police Department has expended resources and undertaken specific training sessions to address these violent incidents and similar incidents involving others with similar disabilities or disorders.

The incident at issue in this Motion occurred on July 16, 2001. Early that evening Albuquerque Police Officers Peterson (who is not a Defendant), and later Johnson and Wood responded to a 911 call from the ARCA home where Fred Hildebrandt was living. Officer Peterson arrived to observe two ARCA employees physically holding Mr. Hildebrandt down on a couch. The employees complained of being tired, informed the officer that they were in fear of injury from Mr. Hildebrandt if they released him, and asked for help in restraining him. Officer Peterson applied her standard issue handcuffs to Mr. Hildebrandt. Shortly thereafter, Officers Johnson and Wood arrived. Officer Wood had training with the Crisis Intervention Team. He

exchanged the standard issue handcuffs with plastic flex-cuffs and applied another set of plastic flex-cuffs as leg restraints.

There is a dispute as to how tightly the plastic flex-cuffs were placed upon Mr. Hildebrandt's wrists and ankles. Plaintiff states that her brother was in extreme pain and discomfort. He was moaning, crying and, at times, screaming in pain. Plaintiff states the cuffs placed on his ankles prevented him from walking. The Officers state that the flex-cuffs were applied as loosely as possible and that the leg restraints were bound in the middle by an additional link to allow mobility. The Officers state that Mr. Hildebrandt could walk quite easily in the leg restraints.

The ARCA employees advised Officers Wood and Johnson that Mr. Hildebrandt was going to be transported to the Las Vegas Medical Center that evening for an emergency mental health evaluation. The ARCA employees either advised the officers at the scene that a van was coming from Las Vegas to transport Mr. Hildebrandt or that ARCA employees would be transporting Mr. Hildebrandt to Las Vegas themselves once they received a commitment report from a psychologist. Officer Peterson received the impression from the ARCA employees that the transport to the Las Vegas Medical Center was imminent.

Officers Wood and Johnson waited almost an hour but neither the transportation van nor the medical authorization arrived. After being assured by ARCA employees that Mr. Hildebrandt would be transported shortly, Officers Wood and Johnson left the ARCA home. Mr. Hildebrandt, still in his flex-cuffs, remained at the home, but now in the care of the ARCA employees. The ARCA employees had requested that the flex-cuffs remain on Mr. Hildebrandt until Mr. Hildebrandt could be secured in the transport van. The Officers decided to leave the restraints on.

Before leaving the ARCA group home Officers Wood and Johnson ascertained that the ARCA employees knew how to remove the restraints and had the proper equipment to remove them. There is a factual dispute as to Mr. Hildebrandt's demeanor when the Officers left. There is some evidence that he was calm.

The Plaintiff and her sister arrived at the ARCA home shortly after the officers had left. Mr. Hildebrandt's parents arrived later. The relatives found Mr. Hildebrandt in the flex-cuffs, restrained hand and foot, emotionally upset and crying. The ARCA employees told Mr. Hildebrandt's relatives that the ARCA staff was waiting for a report from a psychologist and that the staff planned to take Mr. Hildebrandt to the Las Vegas psychiatric facility.

Jean Lucero asked that the restraints be removed. There is a factual dispute as to who was to remove the restraints. The ARCA staff told her the restraints were not to be removed except by the Albuquerque Police. Apparently the Officers thought that once Mr. Hildebrandt was secure in the transportation van, the ARCA staff would remove the restraints. Eventually one of the hand restraints was partially cut by Mr. Chris Heimerl, Director of Long Term Services Division for the State of New Mexico. The Defendants state that Mr. Hildebrandt was released from one of his hand restraints and allowed to eat dinner. Plaintiff denies this stating that the hand restraint was only partially released and that her brother was only given a piece of fruit to eat.

The psychologist's report eventually arrived at the ARCA home about 10:00 PM. The ARCA staff decided however they were too tired to transport Mr. Hildebrandt that evening to Las Vegas. Mr. Hildebrandt's father, E. H. Hildebrandt, called the Albuquerque Police Department to have someone come to the ARCA home and remove the flex-cuffs. Defendants deny this stating that an ARCA employee made the phone call and that the request was to replace the flex-cuff on

4

Mr. Hildebrandt's wrist that had been earlier removed. When Albuquerque Police Officer White arrived at the home he was presented with two opposite requests. The relatives asked Officer White to remove the restraints while the ARCA staff asked him to replace the wrist flex-cuff on Mr. Hildebrandt.. When Officer White learned that Mr. Hildebrandt would not be transported to Las Vegas that evening, the officer decided to remove the remaining wrist and ankle restraints. He did so at about 11:40 PM. Mr. Hildebrandt quietly went to bed and his relatives left. The next morning Mr. Hildebrandt was transported to the Las Vegas Psychiatric Hospital.

### STANDARD OF REVIEW

Defendants the City of Albuquerque, Officer Johnson and Officer Wood have brought this motion asking for summary judgment arguing that there are no material issues of fact in dispute and that they are entitled to judgment as matter of law. Officers Johnson and Wood have also raised the affirmative defense of qualified immunity.

SUMMARY JUDGMENT

Summary judgment is an integral part of the Federal Rules of Civil Procedure which are intended to "'secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (quoting *Russillo v. Scarborough*, 935 F. 2d 1167, 1170 (10th Cir. 1991)

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F. 2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

QUALIFIED IMMUNITY

The Supreme Court has emphasized "the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Discovery is usually stayed until the issue of qualified immunity, which is a legal issue, can be resolved by the trial court. *Snell v. Tunnell*, 920 F. 2d 673 (10th Cir. 1990).

Qualified immunity is an affirmative defense designed to shield government officials who perform discretionary functions from individual liability under 42 U.S.C. §1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Baptiste v. J. C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir. 1998).

Once the defense of qualified immunity is raised in a summary judgment motion, the plaintiff must come forward with facts sufficient to establish first, that the defendants violated a constitutional right and secondly, that the contours of that right were sufficiently clear "that a reasonable official would understand that what he is doing violated that right." *Anderson v.*

6

*Creighton*, 483 U.S. 635, 640 (1987). Therefore, the threshold question in this Motion for Summary Judgment is whether the actions of Officers Johnson and Wood violated a federal constitutional right of the Plaintiff. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194 (2001), *Gross v. Pirtle,* 245 F.3d 1151(10th Cir. 2001). If the plaintiff establishes a violation of a constitutional right, "he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct." *Gross v. Pirtle, supra* at 1156. Once the plaintiff established the violation of a clearly established right, the burden shifts to the defendant, who as is ordinary in a summary judgment case, must establish that there are no genuine material issues of fact and that he is entitled to judgment as a matter of law. *Gross, supra* at 1156 .

## DISCUSSION

I have determined that the Plaintiff has presented an alleged violation of a clearly established constitutional right. Therefore, Officers Johnson and Wood are not entitled to the affirmative defense of qualified immunity. I have further determined that there are material issues of fact in dispute and that the Defendants the City of Albuquerque and Officers Johnson and Wood are not entitled to judgment as matter of law.

Officers Johnson and Wood made four critical decisions during the incident of July 16, 2001, three of which the Plaintiff is claiming violated her brother's constitutional rights. The first decision was to place the flex-cuffs on Mr. Hildebrandt. Plaintiff agrees that it was reasonable under the circumstances to restrain Mr. Hildebrandt and that the decision to initially detain her

7

brother did not violate her brother's Fourth Amendment rights. Plaintiff is arguing however that the subsequent three decisions made by Officers Johnson and Wood did violate Mr. Hildebrandt's Fourth Amendment rights against unreasonable seizure - 1) the decision to leave him restrained in his flex-cuffs in the custody of others, 2) the decision not to arrange an immediate transportation to a mental health facility for an emergency mental health evaluation but to rely on others, and 3) the decision not to monitor Mr. Hildebrandt while he remained restrained.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fourteenth Amendment to the United States Constitution requires the States to secure these rights for their citizens.

The Fourth Amendment applies to this case because the officers handcuffed and restrained Mr. Hildebrandt. "It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for a crime... It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). The hallmark of the Fourth Amendment has always been reasonableness under the circumstances. *Terry v. Ohio, supra*. As Chief Justice Warren wrote, " the central inquiry under the Fourth Amendment is the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry v. Ohio, supra* at 19.

The general rule is that Fourth Amendment seizures are reasonable only if they are based

upon probable cause. *See Michigan v. Summers*, 452 U. S. 692 (1981). This general rule applies not just to criminal cases, but also applies when the government takes a person into custody against his will for an emergency mental health evaluation. *Pino v. Higgs*, 75 F. 3d 1461 (10th Cir. 1996). When officers are called upon to detain a person for an emergency health evaluation, which was the case in *Pino v. Higgs*, the officers must apply the same probable cause standard in those circumstances. *Id.* at 1468. In that case, the Tenth Circuit held that the probable cause standard must be followed when detaining a person for an emergency health evaluation because of the intrusiveness of the seizure. Probable cause was present in *Pino* and the officers were entitled to qualified immunity for their actions.

But *Pino v. Higgs* involved a different situation than the one presently before me. In *Pino* the officers themselves detained, transported the plaintiff to a mental health facility, and monitored her detention until she was admitted to a health facility. The case did not present, nor even discuss, a fact scenario close to the one presented here. While probable cause is agreed to have been present at the inception of the seizure of Mr. Hildebrandt, the issue is the reasonableness of the manner in which the continued seizure was conducted. *Tennessee v. Garner*, 471 U.S. 1 (1985). In looking at the balance of competing interests, the Supreme Court has held that it is imperative not only to look at when the initial seizure was made, but how it was carried out. *Tennessee,* supra at 8.

Not surprisingly, there is a paucity of case law involving circumstances similar to this factual scenario. Most detentions of long duration involve suspected criminal conduct and result in criminal charges. Those detentions of persons for emergency mental health evaluations that result in published cases focus on the issue of probable cause to make the initial seizure. *See*

9

*Moore v. Wyoming Med. Center*, 825 F. Supp 1531 (D. Wyo. 1993); *Pino v, Higgs, supra*. The issue of abandonment of the seized person just doesn't come up.

There are a series of cases however involving the detention of non-suspects during the execution of a lawful search warrant of a home. *See Michigan v. Summers*, 452 U.S. 692 (1981). While the detention of a non-suspect during such a search is not per se unconstitutional, at least two cases have held that the <u>manner</u> in which the detention was conducted could give rise to a constitutional violation. One case involved the four and a half hour handcuffed detention of a man who shared a house with a woman. *Heitschmidt v. City of Houston*, 161 F. 3d 834 (5th Cir. 1998). The woman was the target of a criminal investigation. The man, who was never a suspect nor ever charged with a crime, was lured from the house by police officers who were preparing to execute a search warrant of the house. The officers handcuffed the man, took him back in the house and kept him handcuffed during the entire four and a half hour search. He was not allowed to use the bathroom and the officers would not loosen the painfully tight handcuffs despite his requests. The appellate court found, based upon the pleadings, that it could not say the officers' conduct was objectively reasonable as a matter of law and held that the officers were not entitled to the affirmative defense of qualified immunity.

Another, more egregious case, involved the detention of an elderly, disabled man while the home in which he lived was being searched pursuant to a valid search warrant. *Franklin v. Foxworth*, 31 F. 3d 873 (9th Cir. 1994). The plaintiffs were alleging that the manner in which the officers executed the search warrant was unconstitutional. The elderly man, Mr. Curry, suffered from multiple sclerosis and had been completely unable to walk for several years. He was unable to sit up without assistance and could not control his bowels. Despite being told of Mr. Curry's

disabilities, the police searched Mr. Curry, handcuffed him, carried him to the living room and placed him on a couch.  Mr. Curry was only wearing a t-shirt, but the officers did not offer to bring him clothing or cover his exposed genitals. He was eventually given a blanket but was not allowed to return to his bed for two hours despite a fruitless search of his bedroom.  The Court held that while some form of detention of Curry was lawful because the police had a valid search warrant and he was an occupant of the home, the manner in which the Portland police carried out the detention was unreasonable.  "A detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it involves an undue invasion of privacy.  Detentions, particularly detentions, of the elderly, or of children, or of individuals suffering from a serious illness or disability raise additional concerns." *Franklin v. Foxworth*, *supra* at 876.[1]  Both Courts found that a lawful seizure that was reasonable at its inception, could become unreasonable if it is conducted in a manner that is unjustified under the circumstances.

It is for this reason that I cannot find that Mr. Hildebrandt's prolonged and unsupervised seizure or detention was objectively reasonable as a matter of law.  The manner in which the seizure continued, with Mr. Hildebrandt restrained hand and foot, left in the custody of the staff who may have been the target of his earlier aggression, allegedly in pain and unable to walk, with no provisions made for an immediate, emergency mental health evaluation, is troubling.   As the Ninth Circuit cautioned in *Franklin*, supra, lengthy detentions of those with serious disabilities should raise concerns.  I find this especially true when, as is this case, the detained individual is

---

[1] A concurring opinion in *Franklin v. Foxworth*, 31 F. 3d 873 (9th Cir. 1994), urged the Court to find that the officers were not entitled to qualified immunity.  Since the issue was not before them, however, the majority of the Court chose not to address the issue.

11

left in the care of others who may have cause to prolong or increase his discomfort.

The New Mexico Emergency Mental Health Evaluation Statute, N.M. Stat. Ann. §43-1-10 (2000), codifies the circumstances under which a peace officer may detain and transport a person whom the peace officer has reasonable grounds to believe presents, as a result of mental disorder, a likelihood of serious harm to himself or others and who needs immediate detention to prevent such harm. The detention and transportation under these circumstances does not need a court order. The statute assumes the peace officer will transport the person since it requires that the peace officer be interviewed by the admitting physician upon arrival at the evaluation facility. §43-1-10 (A)(3). The New Mexico statute reinforces my finding that others who have examined these scenarios involving a person who, as the result of mental disorder, is creating a likelihood of serious harm to others, have determined that it is reasonable for a peace officer not only to seize the person but also to remain with and monitor the person while transporting him to an evaluation center[2]. This the officers did not do, the actions which I have held cannot be found objectively reasonable as a matter of law.

Police officers are charged with knowing the basic tenets of the Fourth Amendment, that all seizures of citizens must be reasonable under the circumstances and further, that the manner of detention must be reasonable. *See. e.g., Tennessee v. Garner*, 471 U.S. 1 (1985). "[I]t is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out." *Tennessee*, *supra* at 8. Qualified immunity is not available to the officers if the right the officers is

---

[2] Of course the allegations that Officers Wood and Johnson may have violated the New Mexico Emergency Health Evaluation Statute do not give rise to the conclusion that the officers also violated Mr. Hildebrandt's constitutional rights nor that the violation in and of itself should cause the officers to lose their qualified immunity. *Davis v. Scherer*, 468 U.S. 183 (1984).

alleged to have violated has been clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The Tenth Circuit has stated that ordinarily for the law to be clearly established, that there must a Supreme Court or Tenth Circuit decision on point or there must be clearly established authority from other courts. *Medina v. City and County of Denver*, 960 F. 2d 1493, 1498 (10th Cir. 1992). But this particular type of case, involving the prolonged, unsupervised detention of a suspected mentally disordered individual, has apparently not been addressed by the courts. Even in novel factual situations however, qualified immunity is not available to the officers if the state of the law, at the time of the incident, gave fair warning that the alleged conduct was unconstitutional. *Hope v. Pelzer*, 122 S. Ct. 2508, 2516 (2002); *Medina v. City and County of Denver,* supra at 1497.

I find that the right to be free from seizures carried out in an unreasonable manner is clearly established by a long line of Fourth Amendment cases. *See Tennessee v. Garner*, 471 U.S. 1 (1985) *and the cases analyzed therein*. To be free from seizures carried out in an unreasonable manner includes the right to be free from a seizure involving a long, unsupervised detention. It includes the common sense notion that a police officer does not handcuff an individual hand and foot and then leave them in the custody of the people that the individual had allegedly previously victimized. It includes the right of mentally disabled individual, whether suffering or not from a mental disorder, to have his detention monitored until the individual can be admitted to a medical facility for an emergency mental health evaluation. Therefore, I find that

13

since the constitutional right allegedly violated by the Officers was clearly established by the state of Fourth Amendment law at the time of the incident, the Officers are not entitled to the affirmative defense of qualified immunity.

In addition, the Defendants have failed to establish that there are no material issues of fact in dispute or that any of the Defendants are entitled to judgment as a matter of law.

## CONCLUSION

I find that the pleadings and the affidavits attached to this Motion do not allow me to conclude that the manner in which Mr. Hildebrandt's seizure or detention was conducted was objectively reasonable as a matter of law. Therefore, Plaintiff has established one or more alleged violations of a constitutional right. Furthermore, I find that the constitutional right alleged to have been violated was clearly established at the time of the incident. Therefore, the Defendants Officer Johnson and Officer Wood are not entitled to the affirmative defense of qualified immunity. Lastly, I find that the Defendants Officer Johnson, Officer Wood and the City of Albuquerque are not entitled to summary judgment. Their Motion for Summary Judgment is DENIED.

_____
SENIOR UNITED STATES JUDGE